[Cite as *Fast Tract Title Servs., Inc. v. Barry*, 2024-Ohio-5216.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

FAST TRACT TITLE SERVICES, INC.,      :

      Plaintiff-Appellant,      :      No. 113716

      v.      :

DENVER BARRY,      :

      Defendant-Appellee.      :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** October 31, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-980782

---

### *Appearances:*

L. Bryan Carr, *for appellant.*

Scott J. Friedman, *for appellee.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Plaintiff-appellant, Fast Tract Title Services, Inc. ("Fast Tract"), appeals the trial court's order dismissing its complaint against defendant-appellee, Denver Barry, with prejudice pursuant to Civ.R. 12(B)(6) on the grounds that Fact Tract's claims were barred by res judicata. For the reasons that follow, we reverse the trial court and remand for further proceedings.

**Procedural and Factual Background**

{¶ 2} On June 9, 2023, Fast Tract filed a complaint in the Cuyahoga County Court of Common Pleas, asserting claims of fraud and "personal liability/piercing the corporate veil" against Barry (the "2023 lawsuit"). The claims related to the breach of an escrow agreement involving the sale of real property located at 8018 Garfield Blvd. in Garfield Heights, Ohio (the "property"). In 2014, 1229 Summit, LLC ("1229 Summit"), the then-owner of the property, had agreed to sell the property to Lawrence and Valerie Cater. 1229 Summit and the Caters agreed to use Fast Tract as the escrow agent for the transaction and signed a written escrow agreement setting out the terms of the agreement. Barry, who the complaint alleged was "the managing member, lone decision-maker and sole owner of 1229 Summit," signed the escrow agreement on behalf of 1229 Summit.[1]

{¶ 3} The escrow agreement included an indemnification/hold harmless provision that stated:

> All parties to the transaction jointly and severally promise to save the escrow agent harmless for all damages or losses resulting from the termination of the escrow and agree to indemnify the escrow agent from any and all amounts including costs, expenses and attorney fees the escrow agent may be called upon to pay.

{¶ 4} The sale of the property did not go through as anticipated. The complaint alleged that "[Barry] (after wrongfully demanding more money from the buyers) decided he was not making enough from the sale" and that 1229 Summit,

---

[1] Fast Tract attached a copy of the escrow agreement to its complaint.

therefore, breached its contract with the Caters and "wrongfully backed out of the deal." Several lawsuits followed.

**Prior Lawsuits Referenced in Fact Tract's Complaint**

{¶ 5} Fast Tract's complaint identified three prior lawsuits involving Fast Tract, 1229 Summit and/or Barry relating to the transaction and the escrow agreement. In 2014, 1229 Summit filed suit against Fast Tract and others, *1229 Summit, LLC v. Fast Tract Title Servs., Inc.*, Cuyahoga C.P. No. CV-14-835162 (the "2014 lawsuit"). Fast Tract was granted summary judgment on 1229 Summit's claims against it.

{¶ 6} In 2016, Fast Tract filed suit against 1229 Summit in *Fast Tract Title Servs., Inc. v. 1229 Summit, LLC*, Cuyahoga C.P. No. CV-16-860137 (the "2016 lawsuit"), for breach of contract and indemnification to recover the attorney fees Fast Tract had incurred in defending against the claims 1229 Summit had asserted against Fast Tract in the 2014 lawsuit. Fast Tract was awarded judgment in the amount of $16,319.56 against 1229 Summit after 1229 Summit failed to appear for trial. 1229 Summit never paid the judgment. No appeal was taken.

{¶ 7} In 2018, Fast Tract filed another lawsuit, *Fast Tract Title Servs., Inc. v. Barry*, Cuyahoga C.P. No. CV-18-897291 (the "2018 lawsuit"), asserting fraud and piercing-the-corporate-veil claims against Barry. Following a jury trial, the jury found in favor of Fast Tract and awarded damages. On appeal, this court vacated the trial court's judgment, concluding that the trial court had erred in denying Barry's Civ.R. 12(B)(6) motion to dismiss the complaint for failure to state a claim

upon which relief can be granted because Fast Tract had not pled its fraud claim with particularity, as required by Civ.R. 9(B). *Fast Tract Title Servs. v. Barry*, 2022-Ohio-1943, ¶ 21-22 (8th Dist.). On remand, the trial court inartfully "removed" the case from the court's "active docket." Fast Tract then filed a motion with the trial court for leave to amend its complaint and to place the case on the trial court's active docket. The trial court denied the motion.

### Allegations Relating to Fast Tract's Claims Against Barry in the 2023 Lawsuit

**{¶ 8}** In the action at issue — the 2023 lawsuit — Fast Tract alleged that, on at least six occasions from March 6, 2014 to October 31, 2014, Barry had "through his words, actions and executed documents"[2] represented to Fast Tract that "1229 Summit was a valid and viable entity," that Barry knew these representations were false and that 1229 Summit, in fact, "had no assets, was a sham, was uncollectable and was under-capitalized." Fast Tract further alleged that Barry had made these misrepresentations with the intent that Fast Tract rely upon them and that, in justifiable reliance on these representations, Fast Tract continued to act as the escrow agent for the transaction, causing it to suffer damages.

**{¶ 9}** With respect to its "personal liability/piercing the corporate veil" claim,[3] Fast Tract alleged that "[t]he fiction known as 1229 Summit should be

---

[2] Fast Tract did not further identify or describe these "words," "actions" or "executed documents" in its complaint.

[3] Although pled as such, we note that, under Ohio law, piercing the corporate veil is not an independent cause of action. *Fast Tract,* 2022-Ohio-1943, at ¶ 17 (8th Dist.), citing *RCO Internatl. Corp. v. Clevenger*, 2008-Ohio-6823, ¶ 11 (10th Dist.), and *Geier v.*

disregarded" because "it has been used [as] an unfair device to achieve an inequitable result" and because

> (a) it is used, or is being used, as a means of perpetrating a fraud upon Plaintiff; (b) 1229 Summit, LLC was organized and operated as a tool or business conduit of Defendant; (c) 1229 Summit, LLC is resorted to as a means of evading existing legal obligations; (d) 1229 Summit, LLC is used to circumvent a statute; and (e) 1229 Summit, LLC is relied upon as a protection to justify a wrong.

{¶ 10} The complaint further alleged that 1229 Summit "should not shield fraud, evade obligations, circumvent statute and the like" and that "[t]he 'corporate veil' of 1229 Summit, LLC should be pierced to provide that [Barry] is liable to [Fast Tract] for its judgment against 1229 Summit, LLC" because

> (a) its limited [l]iability form was used as a sham to perpetrate a fraud upon Plaintiff; (b) 1229 Summit, LLC was operated merely as a tool and/or business conduit of Defendant (it was Defendant's alter ego); (c) 1229 Summit, LLC was used to avoid legal and contractual obligations, legal duties and duties of care; (d) 1229 Summit, LLC was used to circumvent statutes; (e) 1229 Summit, LLC was used to justify a wrong; and (f) 1229 Summit, LLC was inadequately capitalized.

{¶ 11} Finally, the complaint alleged that Barry had such complete control over 1229 Summit that it had "no separate mind, will or existence of its own" and that such control was "exercised in such a manner as to commit fraud and other unlawful acts" that resulted in damages to Fast Tract. The complaint did not specifically allege when Fast Tract discovered Barry's alleged fraudulent

---

*Natl. GG Indus., Inc.*, 1999 Ohio App. LEXIS 6263, *10 (11th Dist. Dec. 23, 1999). "Rather, 'it is a remedy encompassed within a claim. It is a doctrine wherein liability for an underlying tort may be imposed upon a particular individual.'" *Fast Tract* at ¶ 17, quoting *RCO Internatl.* at ¶ 11.

misrepresentations and/or Barry's alleged fraudulent or "sham" operation of 1229 Summit.

{¶ 12} Fast Tract requested that it be awarded judgment against Barry in the amount of $16,319.56, plus interest at the rate of 4 percent from November 4, 2014, along with costs, attorney fees, punitive damages and "such other relief as may be just and equitable."

**Barry's Motion to Dismiss the Complaint**

{¶ 13} On November 27, 2023, Barry filed a Civ.R. 12(B)(6) motion to dismiss Fast Tract's complaint for failure to state a claim upon which relief may be granted. Barry argued that Fast Tract's complaint should be dismissed on grounds of res judicata because (1) Fast Tract had already been awarded a final judgment against 1229 Summit in the 2016 lawsuit, (2) the 2016 lawsuit involved the same transaction and occurrence as the 2023 lawsuit, i.e., the escrow agreement and (3) Barry was in privity with 1229 Summit because he was its "managing member, lone decision-maker, and sole owner." Alternatively, Barry argued that Fast Tract's complaint should be dismissed because (1) the "gravamen" of its complaint was for breach of contract and Fast Tract could not use a fraud claim to collect breach-of-contract damages it had been previously awarded on its breach-of-contract claim against 1229 Summit; (2) the damages Fast Tract was seeking had already been awarded to Fast Tract in the 2016 lawsuit against 1229 Summit; (3) Fast Tract's claims were barred by the economic loss rule; (4) Fast Tract's claims were barred by

the statute of limitations and (5) piercing the corporate veil is not an independent cause of action.

{¶ 14} Fast Tract opposed the motion, asserting that (1) res judicata is an affirmative defense and, as such, is not properly decided on a motion to dismiss; (2) this case and the 2016 lawsuit were "not the same case" because the 2016 lawsuit did not involve the personal liability of Barry or the status of 1229 Summit and the 2023 lawsuit did not raise claims that were, or could have been, litigated in the 2016 lawsuit; (3) the privity issue "must be litigated"; (4) the economic loss rule did not apply because there was no contract between Fast Tract and Barry and Fast Tract was asserting a fraud claim, not a contract claim, against Barry and (5) Fast Tract's claims were not barred by the statute of limitations because they were filed within one year of this court's decision to vacate the trial court's judgment in the 2018 lawsuit.

{¶ 15} The trial court granted Barry's motion to dismiss on res judicata grounds, reasoning as follows:

> In the instant case, [Fast Tract] is asserting a fraud claim and a claim to pierce the corporate veil. The alleged fraud in question is related to statements made by defendant Barry, sole shareholder of 1229 Summit LLC, from March 6, 2014 to October 31, 2014 which [Fast Tract] claims they relied on and were material to the transaction. Said transaction is presumably the escrow contract which was originally litigated in the 2016 breach of contract lawsuit. [Fast Tract] further claims they suffered damages given [Barry's] alleged false and misleading representations. As these same facts existed at the time of the 2016 lawsuit and the 2018 lawsuit, [Fast Tract] is now precluded from bringing forward a subsequent lawsuit on the same grounds as could have been raised in the initial suit. Instead, [Fast Tract] only brought

the initial suit against [1229 Summit] instead of both [1229 Summit] and [Barry] at the same time.

Based on the foregoing and the reasons set forth in [Barry's] motion to dismiss, this court grants the motion to dismiss in its entirety with prejudice.

{¶ 16} Fast Tract appealed, raising the following single assignment of error for review:

The trial court erred in dismissing the appellant's complaint.

**Law and Analysis**

**Standard of Review**

{¶ 17} A Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint. *Walas v. Leone*, 2024-Ohio-4791, ¶ 40 (8th Dist.). We review a trial court's decision to grant a Civ.R. 12(B)(6) motion to dismiss de novo, i.e., we undertake an independent review of the record and accord no deference to the trial court's decision. *Perrysburg Twp. v. Rossford*, 2004-Ohio-4362, ¶ 5; *Walas* at ¶ 43; *Hendrickson v. Haven Place, Inc.*, 2014-Ohio-3726, ¶ 12 (8th Dist.).

{¶ 18} When considering a Civ.R. 12(B)(6) motion to dismiss, the court's review is generally limited to the four corners of the complaint along with any documents properly attached to or incorporated within the complaint. *High St. Properties L.L.C. v. Cleveland*, 2015-Ohio-1451, ¶ 17 (8th Dist.), citing *Glazer v. Chase Home Fin. L.L.C.*, 2013-Ohio-5589, ¶ 38 (8th Dist.); *see also Myers v. Vandermark*, 2024-Ohio-3205, ¶ 20 (7th Dist.) ("When a plaintiff relays

information in a complaint and in attachments, that information can be held against the plaintiff in ruling on a Civ.R. 12(B)(6) motion."). The court must accept the material factual allegations of the complaint as true and construe all reasonable inferences to be drawn from those facts in favor of the nonmoving party. *See, e.g., Fahnbulleh v. Strahan*, 73 Ohio St.3d 666, 667 (1995); *Walas* at ¶ 40. For a party to prevail on a Civ.R. 12(B)(6) motion, it must appear beyond doubt from the face of the complaint that the plaintiff can prove no set of facts entitling the plaintiff to relief. *O'Brien v. Univ. Comm. Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 (1975); *Walas* at ¶ 41. If there is "'a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.'" *High St. Properties* at ¶ 16, quoting *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991). "A Civ.R. 12(B)(6) motion does not test the merits of a claim." *Walas* at ¶ 42, citing *Filo v. Liberato*, 2013-Ohio-1014, ¶ 15 (7th Dist.). Thus, "'"[a] court cannot dismiss a complaint under Civ.R. 12(B)(6) merely because it doubts the plaintiff will prevail."'" *Walas* at ¶ 42, quoting *Bono v. McCutcheon*, 2005-Ohio-299, ¶ 8 (2d Dist.), quoting *Leichtman v. WLW Jacor Communications, Inc.*, 92 Ohio App.3d 232, 234 (1st Dist. 1994); *see also Demeraski v. Bailey*, 2015-Ohio-2162, ¶ 12 (8th Dist.) (A dismissal under Civ.R. 12(B)(6) "'is reserved for the rare case that cannot possibly succeed.'"), quoting *Tri-State Computer Exchange, Inc. v. Burt*, 2003-Ohio-3197, ¶ 12 (1st Dist.).

**Res Judicata**

{¶ 19} Fast Tract argues that the trial court erred in dismissing its complaint pursuant to Civ.R. 12(B)(6) based on res judicata because (1) res judicata is an affirmative defense and is not properly decided on a motion to dismiss; (2) the "elements of res judicata" were not established, i.e., Barry's fraud was not at issue in the 2016 lawsuit and "there was no evidence (yet)" that Barry was in privity with 1229 Summit and (3) whether Barry could be personally liable "depends on evidence, not allegations in a complaint."

{¶ 20} Barry responds that res judicata may be the basis for a Civ.R. 12(B)(6) dismissal when it appears on the face of the complaint that the plaintiff's claims are barred and that the allegations contained in Fast Tract's complaint were sufficient to demonstrate that the claims were barred by res judicata. Barry argues that it was clear from the face of Fast Tract's complaint that its claims were barred by res judicata because (1) it involved the same transaction and was based on the same escrow agreement that was the subject of the 2016 lawsuit, (2) the judgment requested in this case, $16,319.56, was the same amount as the final judgment Fast Tract was awarded against 1229 Summit in the 2016 lawsuit, (3) Barry's alleged fraudulent misrepresentations occurred in 2014, nearly two years before Fast Tract filed the 2016 lawsuit (breach-of-contract action against 1229 Summit), (4) Fast Tract could have sued Barry for fraud in the 2016 lawsuit, but chose not to and (5) the trial court could have concluded that privity existed between Barry and 1229

Summit based on the allegations in Fast Tract's complaint that Barry was "the managing member, lone decision-maker, and sole owner of 1229 Summit, LLC."

{¶ 21} Res judicata bars a party from relitigating a claim or issue that has already been decided on the merits by a court of competent jurisdiction in a valid, final judgment in a prior proceeding. *AJZ's Hauling, L.L.C. v. Trunorth Warranty Programs of N. Am.*, 2023-Ohio-3097, ¶ 15; *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62 (1990). It "ensures stability of judicial decisions, deters vexatious litigation, and allows courts to resolve other disputes." *AJZ's Hauling* at ¶ 15; *Natl. Amusements* at 62.

{¶ 22} The doctrine of res judicata encompasses both claim preclusion and issue preclusion. *AJZ's Hauling* at ¶ 16; *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 381 (1995). Under claim preclusion "'an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit.'" (Emphasis deleted.) *Natl. Amusements* at 62, quoting *Rogers v. Whitehall*, 25 Ohio St.3d 67, 69 (1986). Thus, a plaintiff must present every ground for relief in the first action or be forever barred from asserting it. *Brown v. Dayton*, 89 Ohio St.3d 245, 248 (2000); *Grava* at 382. Issue preclusion, also known as collateral estoppel, prevents parties from relitigating facts and issues in a subsequent action that were fully litigated in a prior action. *AJZ's Hauling* at ¶ 16; *Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994).

{¶ 23} This case involves alleged claim preclusion. Claim preclusion applies where (1) there was a prior final, valid decision on the merits by a court of competent

jurisdiction; (2) the second action involves the same parties (or their privies) as the prior action; (3) the second action raises claims that were or could have been litigated in the prior action and (4) the second action arises out of the transaction or occurrence that was the subject matter of the prior action. *AJZ's Hauling* at ¶ 16.

{¶ 24} The Ohio Supreme Court has recognized that, ordinarily, res judicata is not a proper basis for dismissal under Civ.R. 12(B)(6). As the Court explained in *Jefferson v. Bunting*, 2014-Ohio-3074:

> Res judicata is an affirmative defense. Civ.R. 8(C). It is not included on the list of defenses that may be raised in a Civ.R. 12(B) motion to dismiss. For this reason, we have held that res judicata is not a proper basis for dismissal under Civ.R. 12. [*State ex rel. Freeman v. Morris*, 62 Ohio St.3d 107, 109 (1991).]
>
> The *Freeman* rule is consistent with the general proposition that courts cannot rely on evidence or allegations outside the complaint to decide a Civ.R. 12(B)(6) motion to dismiss. *State ex rel. Fuqua v. Alexander*, 79 Ohio St.3d 206, 207 (1997).

*Id.* at ¶ 10-11; *State ex rel. White v. Aveni*, 2024-Ohio-1614, ¶ 22; *Johnson v. Moore*, 2017-Ohio-2792, ¶ 6; *Water St. Condo. Owners' Assn. v. Ferguson*, 2024-Ohio-1592, ¶ 17-18 (8th Dist.); *see also Pfalzgraf v. Miley*, 2019-Ohio-4920, ¶ 12-14 (7th Dist.) ("Because a Civ.R. 12(B)(6) motion only tests the sufficiency of the complaint itself, by comparing the facts of the present case with the facts of the previous case the trial court went outside the pleadings. This was in opposition to what a Civ.R. 12(B)(6) motion allows.").

{¶ 25} In support of its argument that "res judicata may be the basis for a Civ.R. 12(B)(6) motion when it appears on the face of the complaint that the

plaintiff's claims are barred," Barry cites *Ralls v. Lewin*, 2019-Ohio-3302 (1st Dist.). In that case, the defendant filed a motion to dismiss the plaintiff's complaint pursuant to Civ.R. 12(B)(6) on the ground that the matter had previously been adjudicated. *Id.* at ¶ 2. The defendant argued that the plaintiff had asserted the same claim against her in four previous lawsuits. To establish that she was entitled to dismissal, the defendant attached various documents to her motion, including copies of a police report, entries and filings from other court cases and a transcript of a hearing. *Id.* The trial court entered a judgment entry that stated that the matter had come before the court on the defendant's motion for summary judgment and that "[u]pon the motion and for good cause shown," "the [m]otion to [d]ismiss is well taken and hereby granted." *Id.* at ¶ 3. The plaintiff appealed.

{¶ 26} In reversing the trial court, the First District observed, "Res judicata is not a proper basis for dismissal under Civ.R. 12 . . . . Res judicata is an affirmative defense under Civ.R. 8(C), and is not one of the defenses that may be raised in a Civ.R. 12(B) motion to dismiss in the absence of some clear admission on the face of the complaint." *Id.* at ¶ 5. The court held that the trial court had erred in dismissing the complaint pursuant to Civ.R. 12(B)(6) because it had relied on materials outside the pleadings and that trial court had erred by granting summary judgment pursuant to Civ.R. 56 because it had not notified the parties of its intention to convert a Civ.R. 12(B)(6) motion to dismiss into a motion for summary judgment. *Id.* at ¶ 10-12. Accordingly, *Ralls* does not support the trial court's Civ.R. 12(B)(6) dismissal of Fast Tract's complaint in this case.

{¶ 27} In *Jones v. Wainwright*, 2020-Ohio-4870, the Court addressed a res judicata defense that had been raised in a "Civ.R. 12(B)(6) Motion to Dismiss and/or Motion for Summary Judgment" seeking to dismiss a petition for a writ of habeas corpus. *Id.* at ¶ 5. In that case, the petitioner conceded, in two affidavits attached to his petition, that he had filed a habeas petition in 2018 and did not dispute that he asserted the same claim in the prior action that he was asserting in the current action. *Id.* Under those circumstances, where the warden's res judicata defense did not depend on documents outside the pleadings, the Court stated that "it [did] not matter whether the Third District dismissed the petition under Civ.R. 12(B)(6) or Civ.R. 56; either way, it was appropriate for the court to consider whether res judicata applies." *Id.*

{¶ 28} Even assuming a Civ.R. 12(B)(6) motion to dismiss could be properly granted based on res judicata in an appropriate case, i.e., where it appears on the face of the complaint that a plaintiff's claims are barred by res judicata, this is not such a case.

{¶ 29} There is no argument here that Fast Tract's 2023 lawsuit was not an attempt to relitigate claims or issues that were actually decided in the 2016 lawsuit. Rather, Barry argues that the 2023 lawsuit is an attempt to litigate claims that *could have been* litigated and decided in the 2016 lawsuit. Barry contends that Fast Track's claims in this action were barred by res judicata because the 2016 lawsuit against 1229 Summit for breach of contract involved the same transaction and

subject matter — the escrow agreement — and that because Barry was 1229 Summit's sole member, it was necessarily in privity with 1229 Summit.

{¶ 30} In response, Fast Tract asserts that "[t]his case does not raise claims that were (or could have been) litigated in the [2016 lawsuit]," that Barry's alleged fraud was "not at issue in the first action" against 1229 Summit because Fast Tract had "no reason to believe," at the time that it filed the 2016 lawsuit against 1229 Summit, that "[Barry] had committed fraud" and that the issue of whether Barry was in privity with 1229 Summit would need to be litigated.

{¶ 31} In support of its argument, Fast Tract cites several cases, involving allegedly similar facts, in which this court held that res judicata did not operate as a bar to a second action seeking to pierce the corporate veil.

{¶ 32} In *Gowe Printing Co. v. Hall*, 1983 Ohio App. LEXIS 14470 (8th Dist.), The Gowe Printing Company ("Gowe"), had filed an action on an account against The Good Life Publishing Company ("Good Life"). *Id.* at *1-2. Gowe obtained a default judgment against Good Life but the judgment was not satisfied, apparently because Good Life went out of business. *Id.* at *2. Gowe then filed suit against Theodore Hall, chief operating officer and sole shareholder of Good Life, seeking to hold him personally liable, alleging that he had undercapitalized his corporation. The trial court dismissed the subsequent action based on the doctrine of res judicata, stating that the claim against Hall should have been brought in the action against Good Life. *Id.* at *3. On appeal, this court reversed.

{¶ 33} This court held that although the suits involved the same subject matter, "this does not give rise to the defense of res judicata." *Id.* at *4. The suits were against separate entities. The first action was against Good Life, a corporation. The second was against Hall as a corporate officer and shareholder. Further, the first action was on the basis of an account; the second alleged fraud and breach of statutory duty. Therefore, the court concluded that res judicata did not operate to bar the second action. *Id.* at *4-5.

{¶ 34} In *Cranwood Dev. Co. v. Friedman*, 1989 WL 139575 (8th Dist. Nov. 16, 1989), Cranwood Development Co. ("Cranwood") filed a complaint against a heating company, A.R. Heating Co. ("A.R."), for breach of a lease agreement. The case proceeded to arbitration, an arbitration award was entered in favor of Cranwood and Cranwood was awarded $ 12,900 in damages, plus interest and costs. In attempting to collect on the award, Cranwood discovered that A.R. had no assets and that its articles of incorporation had, at some point, been cancelled due to failure to pay franchise taxes. Cranwood then filed suit against Ralph Friedman, a corporate officer who had negotiated the lease for A.R., alleging that Friedman had acted fraudulently in negotiating the lease and seeking to hold him personally liable for its damages. *Id.* at 1. Friedman filed a motion to dismiss, claiming the action was barred by the doctrine of res judicata and that he could not be held personally liable because A.R. had either been a corporation or a de facto corporation at the time the lease was negotiated. *Id.* at 1-2. The trial court granted the motion to dismiss. *Id.* at 2.

{¶ 35} On appeal, this court reversed, concluding that res judicata did not preclude the second action because (1) the two actions were not the same and involved different parties and claims, (2) the first action accrued when the lease was breached whereas the second action accrued when Cranwood discovered Friedman's alleged fraud and (3) the first action "did not actually or necessarily determine A.R.'s corporate status at the time the lease was negotiated, Friedman's liability for the judgment, or whether Friedman acted fraudulently in negotiating the lease." *Id.* at 3-4. The court further held that the complaint had set forth a valid theory of recovery against Friedman personally. *Id.* at 7.[4]

{¶ 36} In *James Lumber Co. v. Nottrodt*, 2012-Ohio-1746 (8th Dist.), a lumber company, The James Lumber Co. ("James Lumber"), filed suit in 2005 against a customer, Summer Hill Homes of Ohio, L.L.C. ("Summer Hill"), for the balance due on account, asserting claims of breach of contract, unjust enrichment and fraud. *Id.* at ¶ 2-3. The parties executed a stipulation for dismissal and judgment entry in which Summer Hill confessed judgment in the amount of $90,000 to James Lumber. *Id.* at ¶ 3. In 2006, James Lumber filed a second lawsuit against Summer Hill and its principals, attempting to pierce the corporate veil, alleging that the principals of Summer Hill had fraudulently transferred assets of

---

[4] Although we recognize that *Gowe* and *Cranwood* were decided before *Grava*, 73 Ohio St.3d, at 382 ("[A] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."), *overruling Norwood v. McDonald*, 142 Ohio St. 299 (1943), paragraph two of the syllabus ("The judgment in a former case does not bar a subsequent action where the causes of action are not the same, even though each action relates to the same subject matter."), we, nevertheless, find them instructive.

the company to avoid paying creditors, including James Lumber. *Id.* at ¶ 4. Summer Hill and one of the principals filed a motion to dismiss pursuant to Civ.R. 12(B), attaching copies of the complaint, stipulation for dismissal and journal entries from the 2005 action, claiming that the 2006 litigation was barred by the doctrine of res judicata. *Id.* The trial court granted the motion to dismiss, ruling that it "lack[ed] jurisdiction based on the doctrine of res judicata as the case was once litigated and dismissed with prejudice in this Court." *Id.* at ¶ 5. The trial court reasoned that "[t]he subject matter of the previous case arose of the same occurrence of the previously litigated case and therefore, the additional claims could have and should have been brought in the previous litigation." *Id.*

{¶ 37} On appeal, this court disagreed and held that the trial court had erred in determining that the second lawsuit was barred under the doctrine of res judicata. *Id.* at ¶ 15, 18. The court explained:

> "Litigation that resulted in a judgment and created a judgment-creditor/judgment-debtor relationship is not res judicata as to a subsequent claim that the debtor fraudulently transferred property to avoid paying the judgment. In other words, appellant was not required to add her claim for fraudulent conveyance to litigation that had not yet resulted in a judgment. Furthermore, a fraudulent-conveyance claim involves issues which were not actually litigated or decided in the prior actions." *Nosal v. Fairlawn Corp. Ctr.,* 2008-Ohio-414, ¶ 12 (9th Dist.), quoting *Blood v. Nofzinger*, 162 Ohio App.3d 545, ¶ 22 (6th Dist. 2005).
>
> While [the principal] is correct in stating that the present litigation derives from the underlying 2005 litigation to obtain judgment on an account in the amount of $90,000, he overlooks the fact that the gravamen of the present litigation is based on actions taken by [the principals] during and subsequent to the pendency of the 2005 litigation . . . . Accordingly, James Lumber's current action is not an

attempt to relitigate a claim or issue litigated and decided in the 2005 action, nor is it an attempt to litigate a claim or issue that might have been litigated and decided in the previous action. Rather, James Lumber's efforts to hold [the principals] personally liable is a part of James Lumber's overall effort to gain compliance with the trial court's October 2005 order, which James Lumber could not have done at any time prior to the date the order was issued . . . . Thus, the trial court erred in ruling that James Lumber's action was barred under the doctrine of res judicata.

*Id.* at ¶ 13-15.

{¶ 38} This court also held that the trial court had "erred procedurally" in granting the motion to dismiss because "Civ.R. 12(B) . . . does not list res judicata among the defenses that may be raised in a motion to dismiss the complaint." *Id.* at ¶ 16-18. Accordingly, this court reversed the trial court's judgment granting the motion to dismiss and remanded the case to the trial court. *Id.* at ¶ 28. We believe a similar result is warranted here.

{¶ 39} Although Fast Tract referenced the 2016 lawsuit and described generally what occurred in that case in its complaint, it did not attach the pleadings or the final judgment in that case to its complaint.[5] In ruling on Barry's motion to dismiss, the trial court assumed that the "same facts" that gave rise to the fraud and "personal liability/piercing the corporate veil" claims asserted against Barry in the present lawsuit "existed at the time of the 2016 lawsuit"[6] and that those claims,

---

[5] Whether the court could take judicial notice of what occurred in the 2016 lawsuit when considering Barry's motion to dismiss, e.g., by reviewing the online docket or the pleadings or orders available on the internet, this was not raised by the parties in their appellate briefs or before the trial court. Accordingly, we do not consider that issue here.

[6] Although the trial court asserts that "these same facts existed at the time of the 2016 lawsuit *and the 2018 lawsuit*" (emphasis added), there appears to be no dispute that

therefore, "could have been raised in the initial suit" and were, therefore, barred by res judicata. However, there is nothing in the complaint upon which the trial court could have reasonably based such an assumption.

{¶ 40} Given the sequence of events alleged in the complaint, it could have been the case that Fast Tract did not learn of the alleged fraudulent nature of Barry's representations (and the other facts that led it to seek to pierce the corporate veil of 1229 Summit and impose personal liability on Barry) until after the judgment Fast Tract was awarded against 1229 Summit in the 2016 lawsuit was not satisfied. In that event, the claims Fast Tract raises here could not have been raised in the 2016 lawsuit and would not be barred by res judicata.

{¶ 41} Accepting as true all the material factual allegations of the complaint and construing all reasonable inferences to be drawn from those facts in favor of Fast Tract — as we are required to do in reviewing a Civ.R. 12(B)(6) motion to dismiss — we cannot say that it appears beyond doubt from the complaint that Fast Tract can prove no set of facts entitling it to relief, based on res judicata.

{¶ 42} Putting aside the issue of res judicata, Barry urges us to affirm the trial court's judgment on several alternative grounds that the trial court did not address in its decision, including that Fast Tract's claims are barred by the economic

---

the present lawsuit was essentially a refiling of the 2018 lawsuit after this court vacated the trial court's judgment in the 2018 lawsuit and the trial court thereafter denied Fast Tract's motion for leave to amend its complaint and to place the case on the trial court's active docket. Barry has made no argument in this case that Fast Tract's claims are barred on res judicata grounds based on its filing of the 2018 lawsuit. Accordingly, we do not address that issue further here.

loss rule and the statute of limitations and that the damages Fast Tract seeks are breach-of-contract damages that were already awarded to Fast Tract in the 2016 lawsuit. We decline to address those alternative grounds in the first instance. Generally, appellate courts do not address issues that the trial court declined to consider. *See, e.g., Fayak v. Univ. Hosps.*, 2020-Ohio-5512, ¶ 28 (8th Dist.); *Lycan v. Cleveland*, 2016-Ohio-422, ¶ 21 ("[A]n appellate court limits its review to issues actually decided by the trial court in its judgment."); *see also Crestmont Cleveland Partnership v. Ohio Dept. of Health*, 139 Ohio App.3d 928, 935 (10th Dist. 2000) ("Appellate courts also do not address issues that the trial court declined to consider. . . . In such a situation, the appellate court should reserve judgment until such time as the undecided issues are considered by the trial court and that decision is appealed."). We leave it to the trial court to first determine the merits of Barry's alternative arguments if Barry chooses to assert those arguments on remand.

{¶ 43} Fast Tract's assignment of error is sustained.

{¶ 44} Judgment reversed; case remanded for further proceedings.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
SEAN C. GALLAGHER, J., CONCUR